Jessel **TURNER** aka Jason
**Turner, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 69845.**

Court of Criminal Appeals of Texas,
En Banc.

Jan. 30, 1991.

Concurring Opinion on Denial
of Rehearing March 13, 1991.

Michael B. Charlton, Charles F. Baird (on appeal only), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., & John M. Bradley, Glenn Gotschall & David Brothers, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

Appeal is taken from a conviction for capital murder. TEX.PENAL CODE § 19.03(a)(2). After finding the appellant guilty, the jury returned affirmative findings to the special issues under Article 37.071 TEX.CRIM.PROC.CODE. Punishment was assessed at death.

Appellant raises ten points of error. He challenges: the sufficiency of the evidence, arguing that the evidence is insufficient to show that the murder was committed intentionally, that the murder was committed deliberately and with the expectation that death would result, and that his conduct was unreasonable in response to the victim's provocation; the trial court's admission of testimony of appellant's reputation from five witnesses; the court's charge defining "intentional" as a culpable mental state; and the voir dire of a venireperson.[1] We will affirm.

Shortly after midnight on February 10, 1986, appellant approached Archie Holmes, a Yellow Cab driver, at a self-service gas station, and asked him for a ride. Holmes declined to accept appellant, and called the dispatcher for another cab. Appellant remained at the service station, after asking Tracey McGrew, the station attendant, for permission to stay until the cab arrived. A few minutes later, the victim, Charles Hunter, also a Yellow Cab driver, arrived at the station. Holmes spoke briefly with Hunter, and appellant got into the back seat of the cab.

A short time later, Jimmy Darks, another Yellow Cab driver, found Hunter's body lying in the street less than half a mile from the gas station.

Medical and forensic testimony established that Hunter died from a gunshot wound which entered the upper part of the left side of his chest and then passed through his heart. Since he did not find soot or gunpowder stippling on Hunter's body, Dr. Harminder S. Narula, a Harris County assistant medical examiner, concluded that the bullet was fired from "at least 24 inches away." In addition, Reidun Hilleman, a Houston Police Department chemist, testified that another chemist for the department had found no gunpowder or stippling on the victim's shirt, and had concluded that the bullet was fired "at several feet," which was defined as three to five feet from the victim.[2]

McGrew, the station attendant, testified that approximately an hour to an hour and one-half after seeing appellant leave with Hunter, appellant returned to the station in a large four-door car. When appellant purchased some gasoline, McGrew noticed a bruise or scrape on his face which was not present earlier.

McGrew gave police a description of appellant and his automobile. Almost immediately thereafter, the officers observed appellant driving past the gas station. When appellant saw the officers, he accelerated through a red traffic light. The officers pursued appellant and signalled for him to

---

1. Appellant has filed a pro se supplemental brief. There is no Texas constitutional right to hybrid representation. *Landers v. State*, 550 S.W.2d 272 (Tex.Cr.App.1977). Appellant's *pro se* brief presents nothing for review. *Rudd v. State*, 616 S.W.2d 623 (Tex.Cr.App.1981).

2. Appellant did not object at trial to Hilleman's testimony concerning the other chemist's tests and conclusions. No corresponding point of error is carried forward in his brief. Thus, the holding in *Cole v. State*, No. 1179-87 (Tex.Cr. App. Nov. 14, 1990) is inapplicable. See TEX.R. CRIM.EVID. 803(6), 803(8)(B).

pull over, but appellant sped away, eventually stopping and surrendering.

Around 8:00 a.m. on that same day, appellant executed a written statement in the presence of Gary Bratton, a Houston Police Sergeant, which stated nothing about any involvement in Hunter's death. An hour or two later, appellant told Bratton that he wanted to get something off of his chest. Appellant then gave a second statement, admitting his presence in Hunter's cab, but stating that Hunter pulled a pistol on him, and it accidentally fired when he struggled with Hunter for control of the gun. In his second statement, appellant claimed that he borrowed the brown Chevrolet he was driving when arrested from a friend named "Ramon." In a third written statement made around 2:40 p.m., appellant explained that he lied about the manner in which he obtained the Chevrolet.

In a fourth written statement given later that afternoon, appellant admitted following two women from the same gas station and robbing them at gun point on the night of Hunter's death.

The pistol used to kill Hunter was found under the passenger's side of the front seat of the Chevrolet appellant was driving when arrested. Ballistics testimony established that the bullet recovered from the cab driver's body was fired from the weapon found in the Chevrolet. The pistol, identified by firearms examiner C.E. Anderson as a .22 caliber Saturday Night Special, required nineteen pounds of pressure per square inch to fire in the double action mode, and eight pounds of pressure in the single action mode. Anderson testified that eight pounds of pressure was "on the lower end of the heavy" range, and that the pressure normally required to pull a trigger is around five to six pounds. He also testified that nineteen pounds was in the "very heavy" range. Anderson further testified on cross-examination that "anyone pulling the trigger would have problems. It's heavy and hard to pull. It would have to be very intentional and pressure would have to be exerted to pull this trigger."

Hunter's cab was found at the apartment complex where appellant resided. A fingerprint from appellant's left ring finger was recovered from the outside of the front passenger door. The inside of the cab was in disarray.

Early in the afternoon on the day of his arrest, appellant was transferred from the station house to the jail. During the transfer, appellant was questioned by Jack Douglas, a Houston Post reporter. In response to questions, appellant admitted that he was in the cab with Hunter when he was killed, but that he did not kill anyone.

Kimberly Hall testified that appellant followed her and Sharon Marshall from a lounge, and robbed them at gunpoint. Appellant fled in Hall's vehicle after taking jewelry and money.

Beandres Williams and Ruby Johnson testified that approximately two hours before Hunter's death, appellant abducted them from the parking lot of a lounge, robbed them at gunpoint, taking jewelry and Johnson's car. Williams testified that appellant raped her prior to releasing her and Johnson. Johnson's car was also found at the apartment complex where appellant resided.

At the punishment stage of trial, all of the evidence from the guilt/innocence stage was re-offered. An unedited version of appellant's third written statement was introduced into evidence, in which appellant admitted to shooting Adam Garcia. Garcia testified that the day before Hunter's death, appellant approached him at a gas station and demanded the keys to his vehicle. Appellant shot Garcia in the abdomen and fled in Garcia's automobile. The bullet recovered from Garcia was fired from the same pistol used to kill Hunter.

Further in the punishment phase, an unedited version of appellant's fourth written statement was admitted into evidence, in which appellant admitted to the robbing and kidnapping of Kimberly Hall and Sharon Marshall.

G.V. Moore testified that appellant shot an unarmed person in the shoulder some two years prior to the instant offense. Jeanetta Burkes, appellant's former wife,

testified that appellant had committed the offense of criminal mischief by breaking out a window of her home. The State also offered proof that appellant had prior convictions for criminal mischief and driving while intoxicated. Six Houston Police Officers and appellant's ex-wife all testified that appellant had a bad reputation for being a peaceful and law abiding citizen.

Two Harris County jailers testified on appellant's behalf. Both testified that appellant had a good reputation for being peaceful and law abiding while incarcerated in the Harris County jail.

In his first point of error, appellant asserts that the evidence is insufficient to establish that he caused the victim's death intentionally. Appellant argues that the evidence of the circumstances of Hunter's death demonstrate the reasonable hypothesis that the death was the accidental result of a struggle for appellant's weapon. Appellant contends that even if the jury rejected his version of the events, the state's evidence was insufficient to show that he intentionally killed Hunter. The evidence, when viewed in the light most favorable to the verdict, fails to support appellant's contention.

■ The standard of review for challenges to sufficiency claims is whether, after viewing the evidence in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Carlsen v. State*, 654 S.W.2d 444, 448 (Tex.Cr.App.1983) (opinion on reh'g). The identical standard is applied to sufficiency challenges involving circumstantial evidence cases. *Id.*, at 449. In applying this standard, if the reviewing court finds that there is a reasonable hypothesis other than the guilt of the accused, then it cannot be said that the guilt has been shown beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234 (Tex.Cr.App.1989).

■ The evidence presented at trial was sufficient to establish that appellant intentionally killed Hunter. Appellant's presence at the scene of the killing was undisputed, as acknowledged by appellant in written statements and an oral admission to a reporter. Appellant also disclosed the location of the weapon used to kill Hunter. According to the firearms examiner, this pistol required at least heavy trigger pressure to be fired, and the firing would have had to have been intentional. According to the expert testimony, the absence of stippling and gunpowder on the deceased and his clothing indicated that the gun was fired from three to five feet away, making less likely appellant's version of the facts, i.e., the shooting occurred during a close struggle over the weapon. *Thompson v. State*, 621 S.W.2d 624, 629 (Tex.Cr.App. 1981).

Appellant first contended that the killing was accidental in his second written statement to the police. The jury could compare appellant's various accounts of his activity on the night in question, ranging from no involvement to at the very least an accidental shooting, and conclude, along with the other evidence presented, that the killing was intentional.

In addition, appellant committed aggravated robberies against four women and one man by using the same or a similar weapon used to kill Hunter within a few hours prior to Hunter's death. In each, he directed his weapon at his victims at close range. Appellant suggested an accidental shooting, contending Hunter initiated the struggle after searching appellant's jacket and finding the gun. The jury was free to draw inferences from the evidence of the extraneous offenses that appellant intentionally killed Hunter, and further reject appellant's belated and self-serving claim of an accidental killing.

With the evidence viewed in the light most favorable to the verdict, we find that a rational jury could have reasonably concluded that appellant intentionally caused Hunter's death, and found that appellant's version of the events presented an unreasonable hypothesis as to the cause of Hunter's death. Appellant's first point of error is overruled.

In his second point of error, appellant asserts that the evidence is insufficient to prove that his conduct was unreasonable in response to the victim's provocation. See TEX.CRIM.PROC.CODE art. 37.071(b)(3). In the court's charge on punishment, the jury was instructed as follows: "Was the conduct of [appellant] in killing the deceased unreasonable in response to the provocation, if any, by the deceased?"

■ The issue of provocation was raised in appellant's second written statement. Appellant claimed that he had argued with Hunter over the fare, and offered the driver a ring to hold. He claimed Hunter threatened him with a pistol, and a struggle ensued. This claim was supported by testimony that appellant had a fresh bruise or abrasion on his face shortly after Hunter was found dead, and that a ring was found near Hunter's body.

The State, however, offered other evidence that the killing was not a reasonable response to provocation. The physical evidence surrounding Hunter's death established that the shooting occurred from three to five feet away, and the weapon required "heavy" pressure to activate the trigger.

At the punishment phase the State presented evidence that appellant previously shot Adam Garcia with the same pistol used in the instant case during the course of robbing Garcia of his car. Garcia testified that after filling his car with gasoline, appellant pushed him from behind. When Garcia turned around, appellant was holding a pistol against Garcia's stomach. Garcia grabbed the arm of appellant's jacket, but appellant shot Garcia before Garcia ever moved appellant's arm. After shooting Garcia in the stomach, appellant raised the gun to Garcia's head and stated, "Give me the key. I've got to go you son of a bitch."

■ The jury, after rejecting the appellant's claim that the killing was accidental, could determine that it was also an unreasonable response to Hunter's actions, if any. Even where a victim's provocation caused a defendant to kill the victim, a jury is free to determine that a defendant's response was unreasonable. *Penry v. State*, 691 S.W.2d 636, 653 (Tex.Cr.App.1985), rev'd on other grounds, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Appellant's display and use of a deadly weapon, a few hours before Hunter's death, with minimal or, in the alternative, no provocation from Garcia, supports a rational conclusion that appellant's response against Hunter's provocation, if any, was unreasonable. *Smith v. State*, 676 S.W.2d 379, 393 (Tex.Cr.App.1984), cert. denied, 471 U.S. 1061, 105 S.Ct. 2173, 85 L.Ed.2d 490 (1985). Appellant's second point of error is overruled.

In his third point of error, appellant argues that the evidence is insufficient to sustain a finding that Hunter's murder was committed deliberately and with the expectation that death would result. See TEX. CRIM.PROC.CODE art. 37.071(b)(1). The jury was instructed to determine whether "the conduct of [appellant] that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result."

■ The evidence at trial demonstrates that appellant got into the cab with a loaded gun, shot Hunter from a distance of three to five feet, and fled in the taxi cab. Appellant's statements claiming an accidental shooting as a result of a struggle were rejected by the jury. Evidence of a struggle does not negate the inference of deliberate conduct. *Livingston v. State*, 739 S.W.2d 311, 339 (Tex.Cr.App.1987), cert. denied, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). The jury could have reasonably concluded that appellant's entrance into the cab with an armed weapon was probative of his deliberate behavior. *Id.; Demouchette v. State*, 591 S.W.2d 488 (Tex.Cr.App.1979), cert. denied, 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981).

In addition, in light of the extraneous offense evidence demonstrating appellant's history of committing armed robberies and his prior shootings of victims, the jury could reasonably draw an inference that appellant's act was committed deliberately

and with the reasonable expectation that the death of the victim would result. Appellant's third point of error is overruled.

In his fourth through eighth points of error, appellant argues that the trial court erred in admitting the testimony of five witnesses as to appellant's bad reputation for being peaceful and law abiding. In his fourth point of error, appellant complains of the testimony of J.D. Vandermark, a former officer with the Houston Police Department. Vandermark testified that he investigated a shooting which occurred two years prior to the instant offense. Appellant was accused of shooting an unarmed victim in the back. During his investigation, Vandermark interviewed "five or six people" from the community in which appellant resided, and based solely upon this investigation, Vandermark learned of and testified to appellant's reputation. Appellant objected to Vandermark's testimony because Vandermark did not know appellant's character prior to the date of the *1984* shooting and investigation.

Reputation testimony may be admissible against an accused. TEX R.CRIM.EVID. 405(a) provides that:

> in order to be competent to testify concerning the character or trait of character of the accused, a witness must, prior to the date of the offense, have been substantially familiar with the reputation of the accused.

Appellant cites *Wagner v. State*, 687 S.W.2d 303 (Tex.Cr.App.1984) (opinion on reh'g), in arguing that Vandermark was not qualified to testify regarding appellant's reputation. *Wagner*, supra at 313–14, emphasized that mere "knowledge of specific acts alone as a basis for reputation testimony violates the rationale for admitting such testimony in the first place," because "such testimony could not possibly constitute the kind of synthesis of observation and discussion in the community which is the basis for deeming reputation evidence reliable." [3]

Vandermark learned of appellant's reputation through conversations with several members of appellant's community prior to the date of the instant offense. Vandermark's testimony was not based upon the bare knowledge that appellant committed the crime which Vandermark was investigating, or upon other specific acts of appellant. Thus, the instant case may be distinguished from the facts of *Wagner*, where the witness's opinion as to Wagner's reputation was founded on knowledge of one particular threat made by Wagner.

■ A reputation witness's testimony must be based on discussion with others concerning the defendant, or on hearing others discuss the defendant's reputation, and not just on personal knowledge. *Jackson v. State*, 628 S.W.2d 446, 450 (Tex.Cr. App.1982). Discussions with other police officers are sufficient to qualify a witness on reputation. *Martin v. State*, 449 S.W.2d 257 (Tex.Cr.App.1970); *see* and *cf. Hernandez, supra* note 3. General reputation testimony is admissible even though it is partially based on discussions concerning the offense for which the defendant is being tried, if it is also based on a discussion of matters other than the instant offense. *Castillo v. State*, 739 S.W.2d 280, 292 (Tex. Cr.App.1987), *cert. denied*, 487 U.S. 1228, 108 S.Ct. 2889, 101 L.Ed.2d 924 (1988). Thus, reputation opinion must be at least partially based on a discussion of matters other than the actions or offenses for which the defendant is being tried. *Watson v. State*, 605 S.W.2d 877 (Tex.Cr.App. 1979); *Gholson v. State*, 542 S.W.2d 395 (Tex.Cr.App.1976), *cert. denied*, 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977).

■ Vandermark's testimony was based upon conversations concerning appellant's reputation with several individuals made during an investigation of appellant, which was prior to and wholly unrelated to the instant case. The trial court did not abuse its discretion in permitting Vandermark to testify to appellant's reputation in

---

**3.** This Court has recently held that the enactment of Rule 405 Tex.R.Crim.Evid., did not alter the *Wagner*, 687 S.W.2d 303, prerequisites for admissibility of reputation testimony. *Hernan-* *dez v. State*, 800 S.W.2d 523 (Tex.Cr.App.1990). The instant case was tried after the effective date of the Texas Rules of Criminal Evidence.

the community. Appellant's fourth point of error is overruled.

In his fifth, sixth, seventh, and eighth points of error, appellant complains of the testimony of four other Houston Police Officers, J.C. Cram, S.J. Williams, D.K. Williams, and R.O. Olive. Each witness was questioned on voir dire outside the presence of the jury, before their testimony was offered. The record reflects that appellant failed to object to the reputation testimony of these witnesses either at the hearing held outside the presence of the jury, or when the reputation testimony was offered before the jury. At the end of the voir dire of Cram, S.J. Williams, and D.K. Williams, however, the trial court ruled that the testimony was admissible.

Assuming *arguendo* that the trial court's rulings preserved these issues for appeal, appellant is still not entitled to relief. The testimony of the officers supports a finding that each officer developed his opinion as to appellant's bad reputation for being peaceful and law abiding based on conversations with members of the community and other police officers, prior to the instant offense. Cram investigated the same 1984 shooting as Vandermark, and interviewed the victim and several other people at the scene. D.K. Williams and S.J. Williams investigated a disturbance involving appellant in 1984. The officers interviewed appellant's ex-wife and an apartment security officer. R.O. Olive based his knowledge of appellant's reputation on discussion conducted with two people during an investigation of appellant in 1977. Thus, the reputation witnesses' testimony was based on discussions with others concerning the appellant, prior to the instant offense. *Jackson v. State*, 628 S.W.2d at 450. Appellant's fifth, sixth, seventh, and eighth points of error are overruled.

In his ninth point of error, appellant asserts that the trial court erred in submitting a legally incorrect definition of the "intentional" culpable mental state to the jury, in that the charge would have allowed the jury to convict him for an intentional murder by finding that he intentionally pulled the trigger, without finding that he had the requisite intent to cause Hunter's death. In the definitional portion of the charge, the trial court instructed the jury that "[a] person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." The charge followed verbatim the definition of "intentionally" in Texas Penal Code § 6.03(a).

Appellant did not object at trial to the court's charge or to relevant parts of the State's voir dire and summation. His appeal is limited to his contention that the definitional portion of the court's charge failed to instruct the jury that appellant had to have the conscious desire to cause the victim's death.

Appellant primarily relies on *Alvarado v. State*, 704 S.W.2d 36 (Tex.Cr.App.1985). *Alvarado* involved the definition of "intentional" under Texas Penal Code § 6.03(a) applied to an Injury to a Child prosecution. On motion for rehearing, we reversed Alvarado's conviction because the charge therein allowed a conviction if Alvarado had the requisite culpability as to either the result of her conduct (injury of a child), or the nature of her conduct alone (placing the child in scalding water). We found that the offense of Injury to a Child hinges on the result of conduct. *Id.* at 39.

Capital murder under Texas Penal Code § 19.03(a)(2) is a "result of conduct" offense. *Kinnamon v. State*, 791 S.W.2d 84 (Tex.Cr.App.1990); *Morrow v. State*, 753 S.W.2d 372 (Tex.Cr.App.1988). Capital murder is defined in terms of one's intent to produce a specified result. Not only must the accused be found to have intended to engage in the act that caused the death, he also must have specifically intended that death result from that conduct; the mere intent to pull the trigger of a firearm will not satisfy the statute. *Kinnamon*, 791 S.W.2d at 88–89.

Definitions in the charge must be examined in the context in which the defined term appears, and cannot be limited to portions of the charge standing alone. *Kinnamon*, at 87; citing *Selvage v. State*,

680 S.W.2d 17 (Tex.Cr.App.1984); *Inman v. State,* 650 S.W.2d 417 (Tex.Cr.App.1983).

In applying the law to the facts in the instant case, the court instructed the jury as follows:

Now, if you believe from the evidence beyond a reasonable doubt that on or about the 10th day of February, 1986, in Harris County, Texas, the defendant, Jessel Turner, also known as Jason Turner, did then and there unlawfully while in the course of committing or attempting to commit the robbery of Charles Hunter, *intentionally cause the death* of Charles Hunter by shooting Charles Hunter with a gun, then you will find the defendant guilty of capital murder, as charged in the indictment.

The charge, therefore, limited the definition of "intentional" by applying it to the factual context; that is: Did appellant *"intentionally cause the death* of Charles Hunter by shooting Charles Hunter with a gun[?]" Clearly, the conduct of shooting the gun alone would not be sufficient to convict under the charge given. Appellant's ninth point of error is overruled.

In his tenth and final point of error, appellant asserts that the trial court erred in allowing the State to commit a venireperson to a position of ignoring mitigating evidence. The record reflects the following exchange between the prosecutor and the venireperson:

Q. All right. Let me ask you, can you conceive of a situation where personally, personally you do not want to see someone get the death penalty? You've been a juror in a case, you've seen a defendant on trial for a period of time, maybe there is something about that person that personally you like. And personally you don't want to see that person get the death penalty. However, you feel that these issues—following your oath as a juror that the State has proven to you these issues beyond a reasonable doubt, they should be answered yes.

Can you answer those questions yes regardless of whether you personally feel that a person should get the death penalty?

A. I would try to do it to the best of my ability, yes.

Q. Let me let you think about that for a little bit because that's a hard question. Obviously, probably not one you thought about before you walked in today, before I asked it of you. Let me see if I can state it again maybe a little clearer.

If you personally felt that a defendant should—maybe you like something about them. All right. And your gut feeling was that you didn't want to see them die or see them receive the death penalty. However, you felt that the State had proven to you beyond a reasonable doubt that the issues should be answered yes, all right, your mind factually, logically Issues 1, 2 and 3 would answer yes?

[DEFENSE COUNSEL]: We object. First of all, the prosecutor is trying to commit the juror to a certain answer; and we feel it is repetitious, Your Honor, as far—

THE COURT: It is certainly repetitious and I'll sustain it on that basis.

To preserve error for appellate review, the complaining party must make a timely, specific objection. *Armstrong v. State,* 718 S.W.2d 686, 699 (Tex.Cr.App. 1985). Tex.R.App.Pro. 52(a). The objection must be made at the earliest possible opportunity, *Marini v. State,* 593 S.W.2d 709 (Tex.Cr.App.1980). The complaining party must obtain an adverse ruling from the trial court, *DeRusse v. State,* 579 S.W.2d 224 (Tex.Cr.App.1979). Finally, the point of error on appeal must correspond to the objection made at trial. *Thomas v. State,* 723 S.W.2d 696 (Tex.Cr.App.1986).

Assuming, *arguendo,* that appellant's objection that the State was "trying to commit the juror to a certain answer" corresponds with his point of error that the State was allowed to commit the venireperson "to a position of ignoring mitigating evidence," this point of error is not properly preserved for appellate review. During voir dire, appellant registered two objections to the State's examination; commitment to an answer and repetition. The trial court sustained appellant's objection

to repetition, and the line of questioning ceased. Appellant failed to seek an adverse ruling on his "commitment to a certain answer" objection, *DeRusse*, 579 S.W.2d at 235; Tex.R.App.Pro. 52(a). Thus, appellant obtained all the relief he requested when the trial court granted his objection based on repetition.[4] Appellant's tenth point of error is overruled.

The judgment of the trial court is affirmed.

TEAGUE, J., concurs in the result.

BAIRD and MALONEY, JJ., not participating.

### OPINION CONCURRING TO DENIAL OF APPELLANT'S MOTION FOR REHEARING

MILLER, Judge, concurring.

Germane to the second ground raised in this motion for rehearing, appellant is correct when he states *Kinnamon v. State*, 791 S.W.2d 84 (Tex.Cr.App.1990), was wrongly decided in light of *Alvardo v. State*, 704 S.W.2d 36 (Tex.Cr.App.1985), *Kelly v. State*, 748 S.W.2d 236 (Tex.Cr.App.1988), and *Haggins v. State*, 785 S.W.2d 827 (Tex.Cr.App.1990). However, there was no objection and there was some limiting instruction in the court's charge (e.g. intentionally caused the death). Thus, there was no egregious harm under *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1984) (Opinion on State's Motion for Rehearing), and the correct result was reached. With these comments, I concur in the denial of appellant's motion for rehearing.

McCORMICK, P.J., and CAMPBELL and WHITE, JJ., join.

BAIRD, J., not participating.

---

appellant accepted the venireperson.