Louis T. BORDERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–90–01173–CR.

Court of Appeals of Texas,
Dallas.

Nov. 26, 1991.

Discretionary Review Granted
March 4, 1992.

LaDonna K. Ockinga, Dallas, for appellant.

Robert P. Abbott, Dallas, for appellee.

Before ENOCH, C.J., and WHITHAM and THOMAS, JJ.

## OPINION

WHITHAM, Justice.

Appellant, Louis T. Borders, appeals a conviction for unlawful delivery of cocaine. We find no merit in any of appellant's seven points of error. Accordingly, we affirm.

In his first point of error, appellant contends that the trial court erred in denying appellant's motion for a new trial because the auxiliary court/drug court that heard the trial of appellant did not have criminal jurisdiction under article 4.01 of the Texas Code of Criminal Procedure. We begin by noting that the forum description used by appellant "the auxiliary court/ drug court" is but an administrative "place" designation of the courtroom space

used by a visiting judge sitting by assignment of the presiding judge of the First Administrative Judicial Region. We note that judges may be assigned in the manner provided by chapter 74 of the Texas Government Code to hold court when necessary to dispose of accumulated business in the region. TEX.GOV'T CODE ANN. § 74.-052(a) (Vernon 1988). The present case reached the complained of "place" or courtroom space in this manner. A grand jury presented the indictment in the Criminal District Court No. 5 of Dallas County, and that court transferred the cause to the 292nd Judicial District Court, Judge Michael Keasler presiding. The presiding judge of the First Administrative Judicial Region, Pat McDowell, later entered two written orders assigning former District Judge R.E. Thornton to sit on the 204th and 265th Judicial District Courts of Dallas County during the weeks of August 12 and 19, 1990. Judge Thornton heard part of appellant's case during each of these two weeks. Appellant does not dispute that the legislature lawfully created all of the Dallas County district courts described above. See id. §§ 24.383, 24.442, 24.469, 24.905. Appellant fails to contest the validity of Judge Thornton's assignment to the respective tribunals or the jurisdiction of the 292nd Judicial District Court at the time of trial. See TEX.GOV'T CODE ANN. § 74.052(a) and § 74.054(a)(3) (Vernon Supp.1991). Qualified visiting judges possess all the powers of the court to which they are assigned, regardless of whether the regular judge is simultaneously presiding. See Herrod v. State, 650 S.W.2d 814, 817 (Tex. Crim.App.1983); TEX.GOV'T CODE ANN. § 74.059(a) (Vernon 1988).

We conclude, therefore, that Judge Thornton had the identical legal authority to hear appellant's case, as did the elected judges of the district courts, to which he was assigned. The judges of district courts in the same county may, in their discretion, exchange benches or districts or transfer any case. Id. § 24.303(a). It is not necessary that either the docket sheet or the minutes state a reason for exchange of benches by district judges, and a formal order need not be entered. Mata v. State,

669 S.W.2d 119, 121 (Tex.Crim.App.1984). This rationale empowered the visiting judges of the old "annex" courts to hear cases. See Peach v. State, 498 S.W.2d 192, 194–95 (Tex.Crim.App.1973), overruled on other grounds, Jackson v. State, 548 S.W.2d 685 (Tex.Crim.App.1977). To paraphrase Peach, by using the name of the assigned judge and Dallas County district court numbers, the Court of Criminal Appeals instructs us that "whether Judge [Thornton] was assigned by administrative order to sit in the [204th] District Court or in the [265th] District Court would not matter under the circumstances presented." Peach, 498 S.W.2d at 195. Therefore, if assigned to either the 204th or the 265th, Judge Thornton would certainly be able to preside in the 292nd Judicial District Court. Peach, 498 S.W.2d at 195. We conclude, therefore, that during the week of August 12, 1990, the judge of the 204th (Judge Thornton) exchanged benches with the judge of the 292nd, and during the week of August 19, 1990, the judge of the 265th (Judge Thornton) exchanged benches with the judge of the 292nd. In sum, we hold that no such court known as "The Auxiliary Court/Drug Court" exists within the judicial system of the State of Texas. Instead, we conclude that names of, or directions or reference to, places such as "Auxiliary Court # 7, Dallas County, Texas," are nothing more than courtroom place designations where disposition of the various matters in cases pending in the lawfully constituted district courts of Dallas County shall be made. It follows that the trial court did not err in denying appellant's motion for a new trial grounded on the assertion that an asserted "court" named "the auxiliary court/drug court" heard appellant's trial. Consequently, we affirm the judgment of the 292nd Judicial District Court of Dallas County, Texas, which appears in our record as the trial court's judgment in the present case. We overrule appellant's first point of error.

In his second point of error, appellant contends that the trial court erred in denying appellant's motion for a new trial because the auxiliary court/drug

courts established in Dallas County were created in a manner that violates article II, section 1 of the Texas Constitution in that their creation breaches the separation of powers doctrine. The thrust of appellant's objection is that the judicial branch has created courts rather than the legislature in the exercise of its constitutionally mandated authority. Appellant, however, failed to make a timely objection on these grounds in the trial court. We conclude that the asserted error is waived. Appellant failed to object to the trial court action. Error is not preserved in absence of objection. *Esquivel v. State,* 595 S.W.2d 516, 524 (Tex.Crim.App.), *cert. denied,* 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980); TEX.R.APP.P. 52(a). It is well settled that almost every right, constitutional and statutory, may be waived by failure to object. *Borgen v. State,* 672 S.W.2d 456, 460 (Tex. Crim.App.1984). Moreover, we concluded in our disposition of appellant's first point of error that no auxiliary courts/drug courts have been established in Dallas County. It follows that the trial court did not err in denying appellant's motion for a new trial for the reasons advanced in appellant's second point of error. We overrule appellant's second point of error.

■ In his third point of error, appellant contends that the trial court erred in denying his motion for a new trial because the verdict and sentence rendered against appellant were fundamentally defective. Appellant asserts that the sentence and verdict were not rendered by an impartial judicial officer, but instead, by a judicial officer paid by District Attorney John Vance, counsel for the opposing party. Vance is also the project director of the Adjudication of Drug Offenders and Asset Forfeiture Project that created the asserted "drug court" and directly funds twenty-five percent of the asserted "court's" expenses and the judge's salary. In short, appellant insists that the district attorney pays the judge and, therefore, commands decisions favorable to the State. Appellant introduced testimony at the hearing on his motion for a new trial that a federal grant pays seventy-five percent of the expenses connected with operating the asserted

"drug courts". Dallas County must then pay the remaining twenty-five percent as "matching funds." To meet this requirement, the district attorney advances the necessary capital from a drug forfeiture asset account into the county's general revenue account. We conclude that at this point the district attorney loses control over this money. We reach this conclusion because the county auditor pays the local share of the asserted "drug court" expenses including the services of the visiting judges. (Thus, in the present case, it is undisputed by the State that twenty-five percent of Judge Thornton's compensation is attributable to these matching funds.) However, the evidence also discloses that the presiding judge of the administrative judicial region approves the payments to the visiting judges. The district attorney's office has no voice in this matter. The presiding administrative judge exclusively authorizes the payments. The presiding administrative judge assigns the visiting judges from a pool of qualified former district judges. The main criteria for the assignment is the availability of the judges. An administrative assistant occasionally advises the presiding judge of complaints from the prosecutors, defense attorneys, court reporters, and bailiffs; but only the presiding administrative judge himself decides which retired judges to use again. The presiding administrative judge has instructed his assistant that lawyers have no say in who hears their case. We read "lawyers" to include the district attorney.

■ Due process of law precludes the subjection of a defendant's liberty or property to the judgment of a court where the judge has an adverse interest in the outcome of defendant's case. *See Tumey v. Ohio,* 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927). The test is whether the situation is one that offers a possible temptation to the average person as a judge to forget the burden of proof required to convict, or one that might lead him not to hold the proper balance between the State and the accused. *See Connally v. Georgia,* 429 U.S. 245, 249, 97 S.Ct. 546, 548, 50 L.Ed.2d 444 (1977); *See also Ward*

*v. Monroeville,* 409 U.S. 57, 60, 93 S.Ct. 80, 83, 34 L.Ed.2d 267 (1972). In the present case, we conclude that the evidence demonstrates that Judge Thornton had absolutely no pecuniary interest in the outcome of appellant's prosecution. We reach this conclusion because the forfeiture assets, which arise from separate judicial proceedings, are already out of the district attorney's control and on deposit in the county's general revenue account when the visiting judges hear the cases. The district attorney cannot prevent payment. Nor does the district attorney influence potential reassignment to the district bench; the presiding administrative judge alone makes that decision. As a result, we conclude that the assigned judges are under no pressure to please the district attorney's office or any other asserted "drug court" litigants. We reach this conclusion because disapproval by the district attorney does not prevent a visiting judge from receiving payment nor future assignments. It follows that the current system of matching funds offers visiting judges no incentives to improperly sway their decisions. Because the uncontradicted evidence shows that the district attorney is in no position to use his matching funds to the disadvantage of criminal defendants, we conclude that appellant received a trial before an impartial judge. We conclude further, therefore, that the trial court did not err in denying appellant's motion for a new trial on the asserted grounds that appellant suffered a fundamentally defective and unfair trial. We overrule appellant's third point of error.

 In his fourth point of error, appellant contends that the trial court erred in sentencing appellant without allowing a punishment hearing. Appellant argues error in the trial court's failure to follow "the custom" in Dallas County. We quote appellant's brief: "Even though the defendant could not afford a jury trial and this was a trial before the court, it is the custom in Dallas County to hold a separate punishment hearing." In the present case, appellant waived the right to a jury and pleaded not guilty. Appellant overlooks the fact that article 37.07, section 2(b) of the Texas Code of Criminal Procedure is applicable only to pleas of not guilty before a jury. *Duhart v. State,* 668 S.W.2d 384, 387 (Tex.Crim.App.1984). In the present case, the trial court assessed punishment, without objection, immediately after finding appellant guilty. Appellant cites no authority for the privilege of a bifurcated nonjury trial, but merely refers to this as the "custom" in Dallas County. Consequently, appellant fails to preserve this question. *See McWherter v. State,* 607 S.W.2d 531, 536 (Tex.Crim.App.1980). As a general rule, an appellant may not assert error pertaining to his sentence or punishment where he failed to object or otherwise raise such error in the trial courts. *See Mercado v. State,* 718 S.W.2d 291, 296 (Tex.Crim.App.1986); *see also* Tex.R.App.P. 52(a). Therefore, we conclude that by neither requesting an opportunity to introduce more evidence nor objecting in the trial court, appellant waived any right to present additional testimony at a separate punishment phase. *See Blalock v. State,* 728 S.W.2d 135, 137 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd). We conclude that the trial court did not err in sentencing appellant without allowing a punishment hearing in violation of an asserted Dallas County "custom." The requirements of law and not "custom" control. We overrule appellant's fourth point of error.

 In his fifth, sixth, and seventh points of error, appellant contends that the trial court erred in granting a verdict contrary to the law and evidence:

(a) in that there was no evidence that appellant exercised care, custody and control over the cocaine and that appellant knew he possessed contraband;

(b) in that the evidence is factually insufficient to support a finding of care, custody and control of the cocaine; and

(c) in that the circumstantial evidence used to prove an affirmative link was not proved by competent evidence beyond a reasonable doubt, and the uncontroverted competent evidence was inconsistent with the conclusion that appellant's proximity could only be concluded as possession.

In his last three points of error, appellant challenges the sufficiency of the evidence to prove his possession of the cocaine. We begin by pointing out that appellant's challenge is grounded on asserted conflict in the testimony of the witness, Police Officer Leland Lewis. Indeed, as briefed and argued, appellant's fifth, sixth, and seventh points of error can be read as complaining that the trial court erred in refusing to acquit appellant because of what appellant perceives to be conflicting evidence, and inferences therefrom, from the mouth of Officer Lewis. We need not, however, dwell on the specifics of the perceived conflict. We point out that the trier of fact is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. *See Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). The trier of fact may believe some witnesses and refuse to believe others and the trier of fact may accept portions of the testimony of a witness and reject other portions. *Lafoon v. State*, 543 S.W.2d 617, 620 (Tex.Crim.App.1976). A court of appeals is not to position itself as a thirteenth juror [a fact finder] in assessing the evidence. Rather, it is to position itself as a final, due process safeguard ensuring only the rationality of the fact-finder. The court is never to make its own myopic determination of guilt from reading the cold record. It is not the reviewing court's duty to disregard, realign, or weigh evidence. This the fact-finder has already done. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). With this explanation before us, we reach the evidence. Viewed in the light most favorable to the verdict the record reflects that at approximately eleven o'clock on the evening of February 9, 1989, Detectives Leland Lewis, Jr., Ted Shinn, and other members of the Dallas Police Department executed a search warrant for 2628 Pennsylvania, Apartment No. 101. The detectives had observed this apartment for several days, and a confidential informant purchased cocaine there. The police officers forcibly entered the premises and found appellant sitting at the head of the kitchen table. Fifty-six baggies of crack cocaine, twenty-seven packages of marijuana, and two loaded automatic pistols were on the table in front of appellant. Two other men stood near the table as if to buy the drugs, and the police discovered $4,025.00 cash, a part of which was lying in plain view on the table and a part of which was inside a briefcase situated on the table. Some of the baggies were price marked for sale. The detectives arrested appellant, another man who possessed the apartment keys, and the two buyers after the suspected contraband field tested positive for cocaine. Laboratory analysis later confirmed that the plastic baggies on the kitchen table contained 109 grams of adulterated cocaine.

We must now determine whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Moreno v. State*, 755 S.W.2d at 867. This is true in both direct and circumstantial evidence cases. *Marroquin v. State*, 746 S.W.2d 747, 750 (Tex.Crim.App.1988). In order to prove possession of a controlled substance the State must prove two elements: (1) that the accused exercised care, control and management over the contraband, and (2) that the accused knew the matter possessed was contraband. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App.1985). Possession means more than being where the action is; it involves the exercise of dominion and control over the thing actually possessed. *McGoldrick*, 682 S.W.2d at 578. When the accused is not in exclusive possession of the place where the contraband is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Guiton v. State*, 679 S.W.2d 66, 69 (Tex.App.—Dallas 1984), *aff'd*, 742 S.W.2d 5 (Tex.Crim.App.1987). *See McGoldrick*, 682 S.W.2d at 578. Since the proof does not show that appellant was in exclusive possession of 2628 Pennsylvania,

Apartment No. 101, the evidence must show facts and circumstances that affirmatively link him to the cocaine. *See Guiton,* 679 S.W.2d at 69. Among the facts and circumstances which the Court of Criminal Appeals has considered as linking an accused to contraband are the following:

(1) that the contraband was in plain view of the accused;

(2) that the contraband was in close proximity to the accused and readily accessible to him;

(3) that the amount of contraband found is large enough to indicate that the accused knew of its presence;

(4) that the accused was closely related to other persons in joint possession of the contraband or who owned the premises or vehicle in which the contraband was found;

(5) that the conduct of the accused with respect to the contraband was such as to indicate his knowledge and control.

*Brunson v. State,* 750 S.W.2d 277, 280 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd).

Other court opinions list factors relevant to the determination of whether an affirmative link exists. They include: the defendant's presence when the search warrant was executed, *Chavez v. State,* 769 S.W.2d 284, 289 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd); the defendant's attempted flight, *Chavez,* 769 S.W.2d at 288; and the presence of other contraband or drug paraphernalia not included in the charge. *See Hughes v. State,* 612 S.W.2d 581, 582–83 (Tex.Crim.App.1981); *Alvarez v. State,* 750 S.W.2d 889, 890 (Tex.App.—Corpus Christi 1988, pet. ref'd). The State is not required to prove a set formula of facts to show possession. *See, e.g., Humason v. State,* 728 S.W.2d 363, 366–67 (Tex.Crim.App. 1987).

We conclude that, applying these factors to the present case, it is clear that there is an affirmative link between appellant and the cocaine which is sufficient to allow a rational trier of fact to find possession by appellant beyond a reasonable doubt. Appellant was present when the search warrant was executed. Appellant was seated at the head of the kitchen table where fifty-six baggies of crack cocaine, two loaded pistols, and twenty-seven packages of marijuana were found. Possession of the guns and the marijuana was not included in the charge. The baggies were price marked for sale, and the police discovered $4,025.00 cash, a part of which was lying in plain view on the table and a part of which was inside a briefcase situated on the table. Apparent customers were standing near the table. The plastic baggies on the kitchen table contained 109 grams of adulterated cocaine.

We conclude, therefore, that additional facts and circumstances, beyond simple presence at the apartment, affirmatively linked appellant to the cocaine. We conclude further that the evidence affirmatively links the appellant to the cocaine in such a manner and to such an extent that a reasonable inference may arise that appellant knew of the cocaine's existence and that appellant exercised control over the cocaine. Consequently, we conclude further that a rational trier of fact could have found beyond a reasonable doubt that, at the time of his arrest, appellant knowingly and intentionally possessed cocaine. We reason that the cumulative force of all the incriminating circumstances was sufficient for the trial court, as the trier of fact, to decide, as it did, that at the time of his arrest, appellant intentionally and knowingly possessed cocaine and exercised control over the cocaine. *See Vaughn v. State,* 607 S.W.2d 914, 921 (Tex.Crim.App. [Panel Op.] 1980). Indeed, we conclude further that in the present case the evidence of affirmative links between appellant and the cocaine excludes every other reasonable hypothesis except that appellant knowingly possessed the cocaine. Thus, in the present case, we reason that we do not have before us proof which amounts only to a strong suspicion or mere probability. *See Oaks v. State,* 642 S.W.2d 174, 179 (Tex.Crim.App.1982). Hence, we conclude that the evidence is sufficient to prove appellant's possession of cocaine. We overrule appellant's fifth and seventh points of error.

▋ In this connection, we are mindful that appellant's sixth point of error as stated asserts that the evidence is "factual-

**668**

ly insufficient." Under the criminal law of this state there is no "factual insufficiency" standard of review for challenges to the sufficiency of the evidence to support the conviction. In civil cases we know that the Texas Supreme Court requires that, in reviewing "factually insufficient" points, we consider all the evidence including any evidence contrary to the judgment. *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex. 1980). The Court of Criminal Appeals, however, has not adopted that standard of review. The Court of Criminal Appeals views the evidence in the light most favorable to the verdict in determining whether the evidence fails to support appellant's conviction. *See Turner v. State*, 805 S.W.2d 423, 427 (Tex.Crim.App.), *cert. denied*, — U.S. —, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). That is the sole sufficiency standard enunciated by the Court of Criminal Appeals. In *Turner*, the Court of Criminal Appeals reiterated the well known rule applicable in criminal cases to challenges to the sufficiency of the evidence. The standard of review for challenges to sufficiency claims is whether, after viewing the evidence in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Turner*, 805 S.W.2d at 427. The identical standard is applied to sufficiency challenges involving circumstantial evidence cases. *Turner*, 805 S.W.2d at 427. In applying this standard, if the reviewing court finds that there is a reasonable hypothesis other than the guilt of the accused, then it cannot be said that the guilt has been shown beyond a reasonable doubt. *Turner*, 805 S.W.2d at 427. Using the standard of review applicable to criminal convictions, we have previously determined that the evidence is sufficient to prove appellant's possession of cocaine. Consequently, for the reasons expressed in our disposition of appellant's fifth and seventh points of error, we overrule appellant's sixth point of error.

Affirmed.