Opinion issued January 27, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-01043-CR

———————————

Odair Jose Reyes, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 184th District Court 

Harris County, Texas



Trial Court Case No. 1220706

 



 

MEMORANDUM OPINION

          Appellant,
Odair Jose Reyes, pleaded guilty to the offense of stalking,[1] and the trial court
deferred adjudication of his guilt, placed him on community supervision for
four years, and assessed a fine of $100. 
The State subsequently filed a motion to adjudicate appellant’s guilt,
alleging several violations of the conditions of his community
supervision.  After hearing evidence on
the motion, the trial court found appellant guilty of stalking and assessed his
punishment at confinement for seven years. 
In two points of error, appellant contends that the evidence is legally
and factually insufficient to support his conviction and the punishment is
excessive and disproportionate to the offense committed.   

          We
affirm.

Background

On July 8, 2009, the trial court
deferred adjudication of appellant’s guilt and placed him on community
supervision for four years with terms and conditions, which read, in pertinent
part, as follows: “You’re not to contact the complainant in person, in writing,
by telephone, via e-mail, via internet, no third party, or by any other means,
or for any other reason except as specified by the Court.”  

Community Supervision Officer A. Walls
testified that the terms and conditions of community supervision were explained
to appellant and he had a chance to ask questions before signing a document indicating
that he understood them.  She explained
that appellant was never given “specific permission . . . to contact the
complainant.”  

The complainant testified that she
had had a prior dating relationship with appellant for approximately three
years.  She explained that prior to his
pleading guilty to stalking her, appellant “constantly” called her and, when
she “quit answering [his] phone calls and [] messages,” he began to drive by her
house to “try to see [her].”  If her
parents’ cars were at her house, appellant would leave, but if there were not
any cars there, or just her car or her brother’s, “he would knock on the door
[or] ring the door bell.”  The
complainant explained that no one would answer the door, and appellant would
eventually leave.  However, she began to
get “scared and nervous” because appellant “was coming by a lot” and he had
“violent tendencies.” 

On July 23, 2009, after the trial
court had placed appellant on community supervision, the complainant’s father
had dropped her off at a “Metro Park and Ride” around 6:00 a.m.  As she was walking to get onto a bus,
appellant approached her and attempted to speak with her.  The complainant explained that because she
did not want to talk to him, she “tried to ignore him and get on the bus, but
he [got] in front of [her].”  She
described appellant as “very persistent in trying to continue the conversation.”
 Appellant asked the complainant why she
did not call him, answer his phone calls, and if she had been talking “to other
boyfriends.”  Appellant had a lunch with
him in a Tupperware container that he tried to give to the complainant, which she
refused.  She told him that she had to go
to school, and she tried to get on to the bus, but appellant would not let
her.  The complainant then “walked back
downstairs, so as to not make a scene, because there [were] a lot of people
there.”  

The complainant explained that
appellant began calling her “the day that he got out” of jail and placed on
community supervision.  Thus, she had her
mother’s telephone with her at the Park and Ride because her father was trying
to get the text messages and voice mails from her cellular telephone that
appellant had previously sent to her.  

After the complainant took out her
mother’s cellular telephone to call her father or for emergency assistance, appellant
took the telephone from her and ran to his car. 
She “got in the car with him because all [she] could think about was
getting the cell phone back.”  The
complainant “struggle[d]” with appellant and tried to do “anything to prolong
him from” leaving.  After she spoke with
appellant, calmed him down, and got her phone back, she left his car, called
her father, and told him what had just happened.  The complainant explained that although she
is afraid of appellant, she only got into the car in order to retrieve the
phone; she “quit thinking at that point in time.”  

The complainant’s father testified
that appellant had dated his daughter in the past and he had helped her obtain
a restraining order against appellant. 
On July 23, 2009, he drove his daughter to the Park and Ride at about
6:10 a.m. to drop her off for work. 
Approximately fifteen minutes later, when he was almost home, he
received a phone call from his daughter who “was pretty upset,”
“hysterical.”  The complainant’s father then
decided to drive down “Walter’s Road” because appellant’s subdivision is “right
off Walter’s Road.”  As he neared
appellant’s subdivision, he saw appellant driving in a “grayish S.U.V.”  Appellant was wearing a bright white T-shirt,
as described to him by his daughter.  The
complainant’s father noted that he had had additional contact with appellant
that day when appellant began texting his daughter’s cellular telephone.  He explained that he had his daughter’s
telephone because he “was going to have the text messages transcribed off of by
T-mobile and bring those along with the cell phone itself to the D.A.’s office
to take whatever action” necessary.  

Appellant testified that on the
morning of July 23, 2009, he was at the Park and Ride to drop off a
friend.  He saw the complainant at the
bus stop, and, when she “said hi,” he said “hi” and gave her a hug.  He asked her, “What happened?  You got big. 
Are you pregnant or something?”  Although
he knew that he had been ordered not to speak to the complainant, he explained that
he had done so only because he ran into her at the Park and Ride and he did not
go there to see her.  Appellant admitted
that he had called the complainant’s cellular telephone that day, but only to
speak with her father to “tell him that [he] was sorry.”  Appellant further admitted that he had also,
through a text message, threatened to kill the complainant, but he did not mean
it.  He stated that he “never ended up
with [the complainant’s] phone” and claimed that she “probably made up the
story about him grabbing her phone.”  On
cross-examination, appellant admitted that he had “violated” his conditions of
probation by speaking with the complainant, but asserted, “I have done nothing
wrong.”   

Sufficiency of the Evidence

In his first point of error,
appellant argues that the evidence is legally and factually insufficient to
support the trial court’s adjudication of his guilt for stalking because the
State failed to prove by a preponderance of the evidence that he had violated
the no-contact condition of his community supervision.  

In a community
supervision revocation hearing, the State must
prove by a preponderance of the evidence that the defendant violated the terms
and conditions of community supervision.  Cobb v. State, 851 S.W.2d 871, 873
(Tex. Crim. App. 1993).  This standard is met when the greater weight
of the credible evidence creates a reasonable belief that the defendant
violated a condition of community supervision as alleged by the State.  Jenkins v. State, 740 S.W.2d 435, 437
(Tex. Crim. App. 1983);
Akbar v. State, 190 S.W.3d 119, 123
(Tex. App.—Houston [1st Dist.] 2005, no pet.).  The trial judge is
the sole trier of the facts and determines the credibility of the witnesses and
the weight to be given their testimony.  Taylor v. State, 604 S.W.2d 175, 179
(Tex. Crim. App. 1980);
Amado v. State, 983 S.W.2d 330, 332
(Tex. App.—Houston [1st Dist.] 1998, pet. ref’d). 
Proof of a single violation is sufficient to support a revocation.  Akbar, 190 S.W.3d at 123. 
Appellate review of a trial court’s order revoking community supervision is limited to determining
whether the trial court abused its discretion. 
Rickels v. State, 202
S.W.3d 759, 763 (Tex. Crim. App. 2006.)  We examine the evidence in the light most
favorable to the trial court’s order.  Id. 


We note that a factual sufficiency review, as urged by
appellant, is inapplicable to revocation
proceedings.  Johnson v. State, 943 S.W.2d 83, 85
(Tex. App.—Houston [1st Dist.] 1997, no writ); see also Cherry v. State, 215 S.W.3d 917, 919
(Tex. App.—Fort Worth 2007, pet. ref’d); Becker v. State, 33 S.W.3d 64, 66
(Tex. App.—El Paso 2000, no pet.).  Instead, we review
the evidence in the light most favorable to the trial court’s order to
determine whether the State proved, by a preponderance of the evidence, that
appellant violated the terms of his community
supervision by approaching the
complainant and speaking with her.  

Appellant argues that the State
failed to prove by a preponderance of the evidence that he violated the no-contact
condition of his community supervision because (1) he “testified that he never
planned to meet [the complainant] at the bus stop because he was taking a
friend name[d] Mario to the bus stop for a trip to Chicago,” (2) he “denied
that he took the complainant’s cell phone from her,” (3) although he “may have
called the complainant’s cell phone, her father answered the phone,” and (4)
the State “failed to provide any proof that appellant left voicemails for the
complainant or sent text messages to her cell phone apart from the testimony of
the complainant.”  

Here, the complainant testified
that appellant approached her at the Park and Ride, spoke with her repeatedly,
and took her cellular telephone.  Her
father further testified that appellant had previously called the complainant’s
cellular telephone that day. 
Furthermore, appellant testified that he spoke with the complainant that
day, and he admitted that speaking with the complainant violated his community
supervision.  Viewing the evidence in the
light most favorable to the order of the trial court, we hold that the evidence
is sufficient to support the trial court’s finding that appellant violated a
condition of his community supervision. 
Accordingly, we hold that the trial court did not abuse its discretion in
adjudicating appellant’s guilt.  

We overrule appellant’s first point
of error.  

Excessive Punishment

In his second point of error, appellant argues that his punishment
of confinement for seven years is excessive and disproportionate to the crime
committed because his conduct did not involve any type of violence or threats,
the complainant “did not fear for her safety,” he had been on community supervision
for less than two months, and he had never been convicted of a felony.  He asserts that his punishment is cruel and
unusual.  See U.S. Const. amend. VIII; Tex. Const. art. I, § 13.  The State argues that because appellant neither
objected to the alleged disproportionality of the sentence in the trial court,
nor raised the issue in a post-trial motion, appellant has not preserved this
argument for our review.  

To preserve error for appellate review, a timely and
reasonably specific objection, followed by an adverse ruling is required.  Tex. R.
App. P. 33.1(a); Jacoby v. State, 227 S.W.3d 128, 130 (Tex. App.—Houston
[1st Dist.] 2006, pet. ref’d) (citing Turner v. State, 805 S.W.2d 423, 431 (Tex. Crim.
App. 1991)).  The failure to object to an
alleged disproportionate sentence in the trial court or in a post-trial motion
waives any error.  Jacoby, 227 S.W.3d at 130; See, e.g., Nicholas v. State, 56 S.W.3d 760, 768 (Tex.
App.—Houston [14th Dist.] 2001, pet. ref’d). Here, appellant neither objected
to the alleged disproportionality of the sentence in the trial court, nor
raised the issue in a post-trial motion. 
His argument, therefore, is not preserved for review.  See Tex.
R. App. P. 33.1(a).

Accordingly, we overrule appellant’s second point of error.

Conclusion

          We
affirm the judgment of the trial court.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Alcala, and Sharp.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. § 42.072
(Vernon 2009).