NO. 12-02-00197-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
VINCENT DAVID REVILL,                             §                 APPEAL FROM THE THIRD
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 ANDERSON COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Vincent David Revill appeals his jury conviction for possession of a controlled substance
with intent to deliver or manufacture. The jury sentenced Appellant to forty-five years of
imprisonment. In thirteen issues, Appellant contests the admissibility of certain evidence and
complains of alleged errors occurring pretrial, the denial of his motions for mistrial, and charge error. 
We affirm.
 
Background
            Based on information received from Robert Frazier, an informant, members of the
Department of Public Safety’s SWAT team executed a search warrant at Appellant’s home. They
found everything necessary to manufacture methamphetamine as well as several different containers
holding varying amounts of methamphetamine. Appellant and another man, Melvin Jernigan, were
arrested at the scene. At trial, Appellant’s defensive theory was ignorance, claiming that Jernigan
had paid him $500.00 for the use of his house that day, without explaining why. The jury found
Appellant guilty of possession of a controlled substance with intent to deliver or manufacture and
sentenced him to imprisonment for forty-five years.
 
Pretrial Issues
Appellant’s Absence
            In his first issue, Appellant asserts the trial court violated his right to be present at his trial
by proceeding to trial in Appellant’s absence. He claims that this was error under the Sixth and
Fourteenth Amendments to the United States Constitution, Article I, Section 10 of the Texas
Constitution, and Article 33.03 of the Texas Code of Criminal Procedure. He argues that this error
is not subject to harmless error review, but if it were, the error would warrant reversal. Appellant
does not explain in what way he was harmed. He states that the record bears no affirmative
indication that his absence was not harmful to him. He argues that the trial court compounded the
error by commenting on Appellant’s absence and suggesting that Appellant was a dangerous man.
            On March 18, 2002, a panel of prospective jurors from which two juries were to be chosen
gathered in the trial court. After some general comments, the trial judge cautioned the
veniremembers not to discuss “what may be going on in this courtroom.” He then called cause
number 25822, State versus Revill. The State announced ready. Defense counsel informed the judge
that he had not seen the defendant that morning. The trial judge explained that he planned to qualify
the panel. He gave the venire general instructions and explained the statutory qualifications to be
a juror and the allowable exemptions for declining jury duty. The judge excused six panel members:
one had to take care of her sick father, two were ill, one could not speak English, one could not read,
and one had previously been convicted of a felony. After admonishing the venire not to discuss the
case, read newspapers, or watch the news, the judge recessed the panel until 9:00 a.m., March 20.
            Under the Sixth Amendment to the United States Constitution and Article I, Section 10 of
the Texas Constitution, the defendant must be present at all phases of the proceedings against him. 
Jasper v. State, 61 S.W.3d 413, 423 (Tex. Crim. App. 2001). Article 33.03 requires, in all felony
prosecutions, the personal presence of the defendant “at the trial” unless he voluntarily absents
himself after pleading to the indictment or after the jury has been selected. Tex. Code Crim. Proc.
Ann. art. 33.03 (Vernon 1989).
            Here, the “proceeding” held in Appellant’s absence was merely qualification of the
prospective jurors and a determination of who met statutory exemptions, a portion of jury selection
not ordinarily considered part of “the trial.” Jasper, 61 S.W.3d at 423. However, because the
prospective jurors had been assigned to Appellant’s case, we consider his trial to have begun during
this process on March 18. Id. Thus, it was statutory and constitutional error for the trial court to
proceed with the excuses and qualifications in Appellant’s absence. Id. Because this issue involves
both nonconstitutional and constitutional error, we apply the standard of harm for constitutional
error. Tex. R. App. P. 44.2(a); Jasper, 61 S.W.3d at 423. In the case of constitutional error, we need
not reverse Appellant’s conviction if we determine that the error was harmless beyond a reasonable
doubt. Id. If there is a reasonable likelihood that the error materially affected the jury’s
deliberations, then the error was not harmless beyond a reasonable doubt. Id. 
            Appellant’s attorney was present during the proceedings. The details of his case were never
mentioned. The trial court gave the usual, general instructions to the panel without commenting
directly on Appellant’s case. The reasons for excusing the six jurors who were excused were all
statutory. See Tex. Gov’t Code Ann. §§ 62.102(5), 62.102(7), 62.106(a)(7), 62.109(a) (Vernon
1998 & Supp. 2004). The trial court took no further action in the case until two days later when
Appellant was present. At that time, Appellant was accorded the full opportunity of examining
prospective jurors. Voir dire was completed and a jury was selected. We determine that Appellant’s
absence during qualification of the jury did not materially affect the jury’s deliberations and was
harmless. We overrule issue one.
Comments by and Actions of Trial Court
            In his second issue, Appellant asserts the trial court erred by informing the jury that Appellant
was absent and by raising his bond and issuing a warrant in front of the jury. He argues that the trial
court rushed to condemn Appellant, underscoring his absence and insinuating that Appellant was in
fact guilty because of this absence. He contends his due process rights were violated because the
presumption of innocence was abrogated. He further argues that the trial court’s actions and
commentary were tantamount to an express instruction that Appellant’s absence should be used
against him.
            Although Appellant was not present at the time of the trial court’s actions, his counsel was. 
However, counsel did not object at the time to the trial court’s actions or comments. Appellant has
not preserved this complaint for review. See Turner v. State, 805 S.W.2d 423, 431 (Tex. Crim. App.
1991). We overrule issue two.
Courtroom Security
            In his third issue, Appellant contends the trial court erred in commenting upon the additional
security in the courtroom and inferring that it was needed because of Appellant. He argues that the
trial court informed the jury that unprecedented security measures were being taken, Appellant was
missing, and under no circumstances should the venire members expose themselves to media
coverage. The implication, he asserts, is that Appellant is a man so dangerous and violent that
previously unheralded security precautions were warranted and Appellant had taken or would take
actions worthy of news coverage. He argues that these comments impaired the presumption of
innocence in violation of his right to due process.
            Appellant did not object to the trial court’s comments. Therefore, he has not preserved this
issue for review. See id. We overrule issue three.
Leg Restraints
            In his fourth issue, Appellant asserts the trial court erred in ordering him to wear leg restraints
in front of the jury. He argues that requiring him to wear the restraints violated his due process rights
and infringed on the presumption of innocence.
            Prior to voir dire on the morning of March 20, the trial court held a hearing on the issue of
whether Appellant should wear leg restraints while in the courtroom. The trial judge explicitly said
that he could not tell that Appellant had restraints on his legs. He said it was impossible to see the
restraints. The chief investigator for the Anderson County District Attorney’s office, Gary Thomas,
testified. He explained that Appellant was arrested Monday. Arresting officers found several guns
in the vehicle he was riding in, including several illegal sawed-off shotguns. Appellant had a .45
stuck in his belt and carried extra ammunition. That afternoon, officers executed a search warrant
on Appellant’s residence. They found a homemade hoax bomb with trip wires running to the front
door and into the house.
            Thomas also testified that Appellant had previously threatened him and Chief of Police Pat
Henderson. He explained that Appellant had placed a homemade hoax bomb near the probation
office to lure Thomas and Henderson outside where he could shoot them. Thomas stated that he
considers Appellant a high security risk. In his opinion, if Appellant is not restrained, it could result
in injury to Appellant, jurors, and courthouse personnel. Thomas recommended that Appellant
remain restrained during the trial.
            The trial judge commented that he had been informed on several occasions in the past few
days by law enforcement and a district judge that Appellant was a high security risk. He then
reiterated the fact that the leg restraints were not visible and ordered that they remain on during the
trial.
            The harm a defendant suffers when the jury sees him in handcuffs or shackles is that his
constitutional presumption of innocence is infringed. Long v. State, 823 S.W.2d 259, 282 (Tex.
Crim. App. 1991). All efforts should be made to prevent the jury from seeing the defendant in
shackles, except where there has been a showing of exceptional circumstances or a manifest need
for such restraint. Id. It is within the trial court’s discretion as to whether a defendant shall be tried
in shackles. Id. On appeal, the appellate court determines whether the trial court abused its
discretion by requiring the defendant to appear in restraints. Id. 
            Appellant failed to appear in court on the first day of his trial. He was arrested a few hours
later. He was heavily armed at the time of his arrest. The trial court heard testimony that Appellant
had plotted to kill law enforcement officers and was warned numerous times that Appellant was a
high security risk. We conclude this constitutes a showing of a manifest need for Appellant to
remain in shackles during the trial. See id. 
            Further, even if the trial court did abuse its discretion in ordering the leg restraints, we cannot
say it caused Appellant harm. The trial court stated for the record that the restraints were not visible. 
Appellant does not direct us to evidence in the record that the jury actually observed the restraints. 
In the absence of evidence that the jury actually saw the shackles, we will not conclude that
Appellant has been harmed. See id. at 283. We overrule issue four.
 
Admission of Evidence
Execution of Search Warrant
            In his fifth issue, Appellant contends the trial court erroneously admitted evidence obtained
in violation of the “knock and announce” rule. He complains that, instead of knocking and
announcing their presence, officers executing a search warrant at his residence used a SWAT team
type entry. Appellant asserts it is a violation of the Fourth Amendment to dispense with the knock
and announce requirement solely because a felony drug search warrant is being executed. He argues
that the State failed to present facts to show the police possessed reasonable suspicion that knocking
and announcing were not viable measures. Therefore, Appellant continues, the search was
unconstitutional and the contraband seized should not have been allowed into evidence.
            We note first that Appellant did not make this complaint in the trial court. It was not
addressed in his motion to suppress and no objection was made on this basis at the time the evidence
was presented at trial. Accordingly, this issue has not been preserved. See Turner, 805 S.W.2d at
431.
            However, our consideration of the merits of this issue reveals no error. Within the protection
provided by the Fourth Amendment is the common law principle that police officers must knock and
announce their presence before attempting a forcible entry into a home. See Wilson v. Arkansas,
514 U.S. 927, 934, 115 S. Ct. 1914, 1918, 131 L. Ed. 2d 976 (1995). The Fourth Amendment does
not, however, require the police to knock and announce in all cases. Richards v. Wisconsin, 520
U.S. 385, 395, 117 S. Ct. 1416, 1422, 137 L. Ed. 2d 615 (1997). Police may make an unannounced
entry if they have reasonable suspicion that the particular circumstances present a threat of physical
violence or a likelihood that evidence will be destroyed. Id., 520 U.S. at 394, 117 S. Ct. at 1421. 
This burden is not high, but the police are required to meet it whenever the reasonableness of a no-knock entry is challenged. Id., 520 U.S. at 394-95, 117 S. Ct. at 1422.
            Sergeant Jerry Powell, with the Texas Department of Public Safety, testified that they made
a hard, fast entry when executing the search warrant at Appellant’s home because there were guns
inside the residence. The officers could have reasonably suspected that there was a threat to their
safety. This testimony supports a determination that the entry was reasonable under the
circumstances. See Stokes v. State, 978 S.W.2d 674, 677 (Tex. App.–Eastland 1998, pet. ref’d). 
Therefore, the trial court did not err in allowing the seized contraband into evidence. We overrule
issue five. 
Plot to Kill Officers
            In his sixth issue, Appellant contends that, at the punishment phase, the trial court erred in
admitting testimony of Robert Thompson, Jr., an acquaintance of Appellant, who testified about an
alleged plot by Appellant to kill police officers. He also complains of questions asked of Clyde
Skeen, Appellant’s cousin and close friend. Before Thompson’s testimony, the State asked Skeen
questions that Appellant argues were improper and asserts were asked merely to induce Appellant
to take the stand and deny the plot. After Appellant testified, denying the existence of any such plot,
the State presented Thompson, who testified that there was a plot to kill Police Chief Pat Henderson. 
Appellant argues that Thompson’s testimony was inadmissible for lack of proper notice as required
by Texas Code of Criminal Procedure article 37.07, section 3(g). See Tex. Code Crim. Proc. Ann.
art. 37.07, § 3(g) (Vernon Supp. 2004). Further, Appellant argues that the evidence was not
admissible as impeachment evidence because the State “set up the impeachment.” He asserts the
State asked a series of improper questions designed to force Appellant to respond by testifying that
he had never threatened any police officers. Finally, he contends Thompson’s testimony was
inadmissible under Rule of Evidence 403 because its probative value was outweighed by the danger
of unfair prejudice.
            First, we consider whether Thompson’s testimony was proper rebuttal evidence. Appellant
complains of three questions asked of State’s witness, Clyde Skeen. The prosecutor asked Skeen,
“[Y]ou’re aware that he’s threatened the life of Chief Pat Henderson?” Skeen began to respond by
saying, “Not specifically, but he said- -” He was cut off by defense counsel’s objection, which was
based on improper notice of the State’s intention to use extraneous offense evidence. While the trial
court was looking at the applicable rule, the prosecutor said, “We withdraw that.” The court then
sustained the objection and instructed the jury to disregard the question. Later, the prosecutor asked
Skeen, “You’re aware that Vince had at his house, had booby trapped his house?” Skeen answered,
“No, sir, I was not aware that he had booby trapped his house.” Defense counsel then objected on
the basis of having no notice of that act. The prosecutor withdrew the question and the trial court
instructed the jury to disregard the question. The prosecutor then asked Skeen if he was aware that
Appellant owns a machine gun. Skeen answered, “No, sir. I’m aware that he used to own an UZI
[sic] years ago.” Counsel for the defense again objected on the basis of improper notice. The trial
court sustained the objection and instructed the jury to disregard it.
            Only the first question referred to the plot to kill police officers. The second and third
questions do not implicate such a threat. Therefore, we fail to see a design that should force
Appellant to testify regarding the alleged plot. Further, the trial court instructed the jury to disregard
all three complained-of questions. We presume that an instruction to disregard will be obeyed by
the jury. Waldo v. State, 746 S.W.2d 750, 753 (Tex. Crim. App. 1988). As those questions were
not before the jury, Appellant had no need to respond to them. 
            Nonetheless, when Appellant took the stand, the second question his attorney asked him was,
“Have you ever made any threats to kill a police officer in Anderson County?” Appellant answered,
“No, sir.” He went on to explain that he believes the police department thinks he has “an ax to grind
against them” for the death of his son. On cross-examination, the prosecutor asked Appellant, “Now,
you said that you didn’t, you’ve never threatened to take Chief Henderson’s life?” Appellant
responded, “No, sir.” After a defense objection, the prosecutor asked Appellant if he and Thompson
had a plot to plant a hoax bomb that would lead to Appellant shooting Henderson. Appellant denied
the existence of any such plan. After the defense rested, the State presented rebuttal testimony. 
Thompson took the stand and described the plan he and Appellant had to kill Pat Henderson and
Gary Thomas, the District Attorney’s investigator. 
            The rule of admissibility of prior inconsistent statements should be liberally construed, and
the trial judge has the discretion to receive any evidence that gives promise of exposing a falsehood. 
Staley v. State, 888 S.W.2d 45, 49 (Tex. App.–Tyler 1994, no pet.). A witness’s prior inconsistent
statement is admissible for purposes of impeachment. Id. The State questioned Appellant about the
details of the incident. Appellant unequivocally denied it ever happened. We conclude the trial
court did not err in allowing the State to impeach Appellant by using a rebuttal witness to testify to
his prior oral inconsistent statement. See Tex. R. Evid. 613; Broden v. State, 923 S.W.2d 183, 189
(Tex. App.–Amarillo 1996, no pet.). 
            Extraneous offense evidence introduced as rebuttal testimony is not subject to the notice
requirement of article 37.07, section 3(g). Jaubert v. State, 74 S.W.3d 1, 4 (Tex. Crim. App.), cert.
denied, 537 U.S. 1005, 123 S. Ct. 495, 154 L. Ed. 2d 403 (2002). Because Thompson’s testimony
was rebuttal evidence, Appellant’s notice arguments fail.
            Finally, Appellant’s complaint pursuant to Rule of Evidence 403, that Thompson’s testimony
is inadmissible because its probative value is outweighed by the danger of unfair prejudice, was not
preserved for review. He made no Rule 403 complaint at trial. See Turner, 805 S.W.2d at 431. We
overrule issue six.
Evidence of Other Drug Activity
            In his tenth issue, Appellant contends the trial court erred in admitting evidence of other drug
activity related to methamphetamine. In his eleventh issue, Appellant asserts the trial court erred in
admitting evidence of other drug activity related to marijuana. Appellant complains that, during the
guilt-innocence phase, by cross-examination of Appellant and through rebuttal testimony of the
informant, the State presented evidence that he provided someone with methamphetamine, sold and
cooked methamphetamine on other occasions, possessed the ingredients and equipment to
manufacture methamphetamine, and possessed and used marijuana. He argues that the evidence was
offered to prove character conformity, had no probative value, and was unduly prejudicial.
            a. Applicable Law
            The trial court has wide discretion in deciding whether to admit evidence of extraneous
offenses. Montgomery v. State, 810 S.W.2d 372, 390-93 (Tex. Crim. App. 1991) (op. on reh’g). 
We will not disturb the trial court’s decision to admit evidence of extraneous offenses absent an
abuse of discretion. Id. at 391. As long as the trial court’s ruling is within the zone of reasonable
disagreement, an appellate court will not reverse that ruling. Id. As a general rule, to prevent an
accused from being prosecuted for some collateral crime or misconduct, the State may not introduce
evidence of bad acts similar to the offense charged, even if relevant. Tex. R. Evid. 404(b). 
However, this type of evidence may be admissible for other purposes, such as proof of motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Id. 
Even if the evidence is relevant and falls within a permissible exception under Rule 404(b), the
evidence may still be excluded by the trial court under Rule 403 if its probative value is substantially
outweighed by the danger of unfair prejudice. Montgomery, 810 S.W.2d at 387. 
            In addition to the explicit exceptions set out in Rule 404(b), extraneous offense evidence may
be admissible as contextual evidence. Wyatt v. State, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000). 
There are two types of contextual evidence: (1) evidence of other offenses connected with the
primary offense, referred to as same transaction contextual evidence; and (2) general background
evidence, referred to as background contextual evidence. Mayes v. State, 816 S.W.2d 79, 86-87
(Tex. Crim. App. 1991). Same transaction contextual evidence is admissible as an exception under
Rule 404(b) where such evidence is necessary to the jury’s understanding of the charged offense. 
Rogers v. State, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993) (op. on reh’g). Same transaction
contextual evidence is admissible when the charged offense would make little or no sense without
also bringing in the same transaction evidence. Id. It is admissible because in narrating the crime
for which the defendant is on trial, it is impracticable to avoid describing the contextual evidence. 
Mayes, 816 S.W.2d at 86 n.4. Such evidence provides the jury information essential to
understanding the context and circumstances of events that are blended or interwoven. Camacho
v. State, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993). In contrast, background contextual evidence
is not admissible as one of the “other purposes” for which evidence may be admitted under Rule
404(b) when it includes an impermissible character component. Mayes, 816 S.W.2d at 88.
            b. The Record
            Appellant has referred us to a total of twenty-seven pages of testimony, argument, and voir
dire of a witness without specifying the exact questions he finds offensive. Thirteen of those pages
contain testimony elicited outside the presence of the jury and the accompanying objections,
argument, and ruling. Within this portion of the record, no extraneous offense evidence was
admitted before the jury. Thus, this portion of the record presents no error for our consideration.
            c. Drug Use 
            On cross-examination of Appellant, the prosecutor asked him if he uses marijuana. 
Appellant answered, “I have.” His counsel’s objection, which was sustained, was late. The
prosecutor then asked Appellant, “Do you use methamphetamine?” He answered, “No, sir.” His
counsel then made the same objection. Any complaint as to these two questions was waived because
they came after the answer. See Lagrone v. State, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997). 
The prosecutor then asked Appellant if he had ever used methamphetamine. Appellant said he had
tried it once, two or three years ago. Appellant lodged no objection to this question and his
complaint is therefore waived. See id.
            d. Marijuana
            The prosecutor requested a bench conference to ask permission to go into extraneous matters. 
Defense counsel’s objection was overruled as to any use of drugs. Later, the prosecutor showed
Appellant State’s Exhibit Number 87 and asked if he knew what it was. Appellant said it “[l]ooks
like marijuana.” Defense counsel objected because there had been no testimony by the lab technician
identifying the substance as marijuana and no testimony that Appellant was qualified to identify the
substance. The trial court instructed the jury that there had been no determination as to what that
substance was. The prosecutor then asked Appellant, “If this is marijuana, do you know they found
it at your house?” Appellant answered, “If you say so.” The prosecutor then asked, “You said you
smoke occasionally?” Appellant said, “I have before.” Then there was an additional exchange about
whether or not the marijuana was Appellant’s. 
            Evidence that Appellant possesses one type of controlled substance, marijuana, could
arguably make it more probable that Appellant would also be inclined to be in possession of another
type of illegal substance, such as methamphetamine. See Rogers, 853 S.W.2d at 32. Therefore, it
was within the zone of reasonable disagreement for the trial court to find that the evidence pertaining
to the marijuana found during the search was relevant. See id. at 32-33. Because the marijuana in
Exhibit Number 87 was found at the time of Appellant’s arrest for the instant offense, it is same
transaction contextual evidence. However, in describing the offense of possession of
methamphetamine, it is not impracticable to avoid describing possession of marijuana. Therefore,
the evidence of the marijuana found at Appellant’s residence during the search was not admissible. 
The trial court erred in allowing this line of questioning. See id. at 33. We must next consider
whether the error is harmless.
            The question of whether a court erred in admitting evidence of an extraneous offense is an
evidentiary issue that does not rise to constitutional levels. Johnson v. State, 967 S.W.2d 410, 417
(Tex. Crim. App. 1998). We reverse only if we find that the error affected the substantial rights of
the defendant. Tex. R. App. P. 44.2(b). A substantial right is violated when the error made the
subject of the Appellant’s complaint had a substantial and injurious effect or influence in
determining the jury’s verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Here,
evidence that Appellant possessed a small amount of marijuana at the time of his arrest played a
minor role in the prosecution for possession of methamphetamine with intent to deliver or
manufacture. Very little time was spent on that subject, and the State never mentioned the marijuana
during its closing argument. The State never proved the substance was actually marijuana or that
it was found in Appellant’s residence during the search on the day of his arrest. We conclude that
the trial court’s error in admitting the evidence of the marijuana did not have a substantial or
injurious effect or influence on the jury’s verdict and was, therefore, harmless. See id.
            e. Other Methamphetamine Offenses 
            Next, Appellant complains of a series of questions the prosecutor asked him about his
experiences with methamphetamine. The prosecutor asked Appellant if he gave Robert Frazier, the
informant, his first dose of methamphetamine. Defense counsel objected on the basis that it referred
to extraneous offenses. The objection was overruled but Appellant never answered. The prosecutor
then asked if Appellant had made methamphetamine on numerous occasions. Defense counsel made
the same objection, which was overruled. Appellant answered in the negative. These two questions
refer to background contextual evidence, which is not admissible. Mayes, 816 S.W.2d at 88. We
find the questions harmless. Frazier had previously insinuated that Appellant introduced him to
methamphetamine and was the first to provide him with the drug. As we shall discuss, Frazier also
later testified in rebuttal that it was Appellant who first provided him with methamphetamine and
that he had seen Appellant manufacture methamphetamine several times. Because this evidence was
properly introduced in rebuttal, any reference to it during cross-examination was harmless. King,
953 S.W.2d at 271.
            The prosecutor then asked Appellant if he had made methamphetamine with Robert Frazier
and another person. Appellant answered no and maintained that he had never made
methamphetamine. No objection was voiced. Any error would be waived. See Lagrone, 942
S.W.2d at 618. Moreover, inasmuch as this question could be referring to the offense for which
Appellant was on trial, we see no error.
            The prosecutor asked Appellant if he had made methamphetamine and given it to Robert
Frazier on other occasions. Appellant answered no. The prosecutor then asked if Appellant had
given another named individual methamphetamine. Appellant again answered no. There were no
objections to these two questions. Therefore, any error was waived. See id.
            f. Rebuttal Testimony
            The State called Robert Frazier in rebuttal. He testified that Appellant gave him his first dose
of methamphetamine and then he got the drug from Appellant more than twenty times. He explained
that he obtained methamphetamine from Appellant at Appellant’s house and Appellant used it with
Frazier. He has seen other people buy methamphetamine from Appellant at Appellant’s house on
many occasions. Frazier saw Appellant manufacture methamphetamine several times at Appellant’s
house. Appellant discussed with Frazier how to make methamphetamine and the fact that he had
made it on many occasions when Frazier was not there. Frazier testified that Appellant had
methamphetamine with a man named John Carroll Byrd, who obtained some chemicals for
Appellant. Appellant asked Frazier and others to get chemicals for him that are used in making
methamphetamine. Prior to the day of the raid, Frazier had seen some chemicals and scales at
Appellant’s house.
            The State argues that this testimony was properly admitted to rebut Appellant’s defensive
theory. We agree. Appellant took the stand in his own defense and denied any knowledge of the
crime with which he was charged. He claimed that Jernigan had called him and offered to pay him
$500.00 for the use of his house for a few hours. Appellant testified that Jernigan brought all the
drugs and lab items used to make methamphetamine. He denied cooking methamphetamine or
handling anything. He was merely doing his laundry that day. He claimed that he did not want to
know what Jernigan was doing and is only “guilty of stupidity.” The trial court explained that it
would allow the rebuttal testimony because Appellant opened the door by saying he was ignorant
about everything having to do with methamphetamine.
            Rebuttal of a defensive theory is one of the permissible purposes for which relevant
extraneous evidence may be admitted under Rule 404(b). Moses v. State, 105 S.W.3d 622, 626
(Tex. Crim. App. 2003); Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). Frazier’s
rebuttal testimony is relevant because it tends to make the fact that Appellant was involved in
cooking methamphetamine at the time of the raid more or less probable. See Swarb v. State, 125
S.W.3d 672, 683 (Tex. App.–Houston [1st Dist.] 2003, pet. dism’d). 
            Appellant also challenges the admissibility of this evidence under Rule 403, complaining that
the evidence should not have been admitted because its prejudicial effect outweighed its probative
value. See Tex. R. Evid. 403. Only unfair prejudice provides the basis for exclusion of relevant
evidence. See Montgomery, 810 S.W.2d at 389. Unfair prejudice arises from evidence that has an
undue tendency to suggest that a decision be made on an improper basis, commonly an emotional
one. Id. A presumption exists that relevant evidence will be more probative than prejudicial. Id. 
In determining whether the prejudicial effect of evidence substantially outweighs its probative value,
several factors should be considered: (1) how compellingly evidence of the extraneous misconduct
serves to make more or less probable a fact of consequence; (2) the potential the “other crime,
wrong, or act” has to impress the jury in some irrational but indelible way; (3) how much trial time
the proponent needs to develop evidence of the extraneous misconduct; and (4) how great is the
proponent’s need for the extraneous transaction. Lane v. State, 933 S.W.2d 504, 520 (Tex. Crim.
App. 1996). 
            Appellant’s entire defense was that he knew nothing on the subject of methamphetamine. 
Evidence of a pattern of manufacture and sales of methamphetamine constitutes strong, probative
evidence that Appellant’s claim of ignorance is false. However, the extraneous offenses were no
more heinous than the instant offense. Thus, the evidence was compelling and not likely to create
such prejudice in the minds of the jury that it would have been unable to limit its consideration of
the extraneous offense evidence to its proper purpose. See Taylor v. State, 920 S.W.2d 319, 323
(Tex. Crim. App. 1996). Frazier’s rebuttal testimony is contained in slightly more than six pages
of the 154 pages of testimony in the guilt-innocence phase of the trial. The State did not spend an
undue amount of time presenting this evidence. After the State rested its case, Appellant took the
stand and articulated his defense that Jernigan alone was manufacturing methamphetamine at
Appellant’s house on the day of the raid. The rebuttal evidence was essential to show the defensive
theory lacked merit. We conclude the trial court did not abuse its discretion by allowing Frazier’s
rebuttal testimony. We overrule issues ten and eleven.
 
Motions for Mistrial
            In issues seven, eight, and nine, Appellant asserts the trial court erred in denying three
separate motions for mistrial he made after his objections to three of the State’s questions were
sustained. He argues that the State knowingly asked objectionable questions to place highly
prejudicial matters in front of the jury. He contends the motions to disregard were insufficient to
remove the taint of the improper questions. Appellant argues that the conduct of the prosecutor
violated his Fourteenth Amendment due process rights and, therefore, his motions for mistrial should
have been granted.
            The denial of a motion for mistrial is reviewed for an abuse of discretion. See Trevino v.
State, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999). A trial court does not abuse its discretion when
its decision is at least within the zone of reasonable disagreement. Montgomery, 810 S.W.2d at 391. 
As a general rule, any error in admitting improper testimony may be cured by the trial court’s
withdrawal of the evidence and an instruction to the jury to disregard. Cavender v. State, 547
S.W.2d 601, 603 (Tex. Crim. App. 1977). Mistrial is an extreme remedy that is appropriate only
when the objectionable event is so emotionally inflammatory that a curative instruction is not likely
to prevent the jury from being unfairly prejudiced against the defendant. Id. Testimony referring
to extraneous offenses can be rendered harmless by an instruction to disregard, unless it is so clearly
calculated to inflame the minds of the jury and is of such a nature as to suggest the impossibility of
withdrawing the impression produced. Kemp v. State, 846 S.W.2d 289, 308 (Tex. Crim. App.
1992); Huffman v. State, 746 S.W.2d 212, 218 (Tex. Crim. App. 1988).
            The three complained-of questions came during the State’s questioning, at the punishment
phase, of its own witness, Clyde Skeen. Just before the first question at issue, Skeen had testified
that Appellant was afraid that local law enforcement was going to kill him or have him killed and
that Appellant has a grudge against the police. The prosecutor then asked Skeen if he was aware that
Appellant had threatened the life of Chief Pat Henderson. Appellant objected on the basis of
improper notice specifically asserting that the notice did not mention a threat and did not indicate
the county where the alleged offense was committed. However, the State’s amended notice lists the
incident the State was referring to. The notice stated that “[o]n 02-14-02, supplied Robert Thompson
with components for Hoax bomb to be placed between Adult Probation Department and Dry
Cleaners, in order to draw Pat Henderson, Chief of Police, to the scene and shoot him with a Deer
Rifle.” Although the county is not named, the notice provided enough information for Appellant to
ascertain the location. Thus, the State’s notice substantially complies with the statutory
requirements. See James v. State, 47 S.W.3d 710, 714 (Tex. App.–Texarkana 2001, no pet.). As
Appellant received proper notice, the trial court erred in sustaining his objection. There can be no
error in the trial court’s denial of his motion for mistrial.
            Skeen was with Appellant when he was arrested on Monday, March 18. The prosecutor was
eliciting testimony about that event when he asked Skeen the second of the complained-of questions,
whether he was aware that Appellant had booby trapped his house. Appellant objected on the basis
that no notice was given. The State’s amended notice lists the following as item seventeen: “On 03-18-02, Possession of Hoax Bomb.” Item eighteen lists a related offense: “On 03-18-02, Possession
of components for Bomb.” The prosecutor was attempting to elicit information on these items. 
Therefore, Appellant received notice. The State withdrew the question and the jury was instructed
to disregard unnecessarily. The trial court did not err in denying Appellant’s motion for mistrial.
            Immediately after the last motion was denied, the prosecutor asked Skeen the third of the
complained-of questions, whether he was aware that Appellant owns a machine gun. Appellant’s
objection, which was on the basis of insufficient notice, came after Skeen answered. Item nine on
the State’s amended notice lists the following: “Possession of a Machine gun not registered in the
national firearms registration and transfer record as required by the secretary of the us treasury.” 
Item ten names “Possession of a Prohibited Weapon - Machine Gun; on or about 9-5-00 (Anderson
County). This notice substantially complies with the statute. See Tex. Code Crim. Proc. Ann. art.
37.07, § 3(g). The objection should not have been sustained, and the trial court did not err in
denying Appellant’s motion for mistrial.
            Even if notice had been insufficient, rendering the trial court’s rulings on the objections
correct, we would not find an abuse of discretion in denying the three motions for mistrial. The
alleged errors occurred in the punishment phase and did not involve drug offenses. The questions
indicated that Appellant made empty threats against law enforcement and possessed a prohibited
weapon. The jury had been told during the guilt-innocence phase that Appellant was almost always
armed and kept weapons at his residence. We conclude that the questions did not affect the jury to
the extent they were unable to disregard them as instructed. See Kemp, 846 S.W.2d at 308. We
overrule issues seven, eight, and nine.
 
Jury Instructions
            In his twelfth issue, Appellant contends the trial court erred in failing to instruct the jury at
the guilt-innocence phase that any extraneous offenses must be proven beyond a reasonable doubt. 
In his thirteenth issue, Appellant asserts that the trial court erred in failing to give the jury a limiting
instruction at the guilt-innocence phase on the use of extraneous offenses. He argues that the failure
to so instruct violates his due process rights under the Fourteenth Amendment to the federal
constitution.
            Rule of Evidence 105(a) provides as follows:
 
              When evidence which is admissible as to one party or for one purpose but not admissible as
to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence
to its proper scope and instruct the jury accordingly; but, in the absence of such request the court’s
action in admitting such evidence without limitation shall not be a ground for complaint on appeal.

 

Tex. R. Evid. 105(a). Where evidence is admissible for a limited purpose and the court admits it
without limitation, the party opposing the evidence has the burden of requesting a limiting
instruction. Abdnor v. State, 808 S.W.2d 476, 478 (Tex. Crim. App. 1991). The request for the
limiting instruction must be made at the admission of the evidence. Hammock v. State, 46 S.W.3d
889, 894 (Tex. Crim. App. 2001). Further, if a defendant, during the guilt-innocence phase, asks for
an instruction to the jury on the standard of proof required for admitting extraneous offenses, the
defendant is entitled to that instruction. Ex parte Varelas, 45 S.W.3d 627, 631 (Tex. Crim. App.
2001).
            Here, Appellant never requested a limiting instruction or an instruction on the burden of
proof. He has therefore waived any complaint about the absence of such instructions. See Tex. R.
Evid. 105(a); Ex parte Varelas, 45 S.W.3d at 631. We overrule issues twelve and thirteen.
 
Conclusion
            Appellant has raised no reversible error. We affirm the trial court’s judgment.
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
 
 
Opinion delivered June 23, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

(DO NOT PUBLISH)













COURT OF APPEALS
TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
JUDGMENT
 
JUNE 23, 2004
 
NO. 12-02-00197-CR
 
VINCENT DAVID REVILL,
Appellant
V.
THE STATE OF TEXAS,
Appellee

 
 Appeal from the 3rd Judicial District Court
 of Anderson County, Texas. (Tr.Ct.No. 25822)
 
                                                                                                                                                           
 
 
                                    THIS CAUSE came to be heard on the appellate record and briefs filed herein,
and the same being inspected, it is the opinion of this court that there was no error in the judgment.
                                    It is therefore ORDERED, ADJUDGED and DECREED that the judgment
of the court below Be In All Things Affirmed, and that this decision be certified to the court
below for observance.
                                    Diane DeVasto, Justice.
                                    Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.


THE STATE OF TEXAS
M A N D A T E
TO THE THIRD JUDICIAL DISTRICT COURT OF ANDERSON COUNTY, GREETINGS:
 
            Before our Court of Appeals for the 12th Court of Appeals District of Texas, on the 23rd
day of June, 2004, the cause upon appeal to revise or reverse your judgment between
 
VINCENT DAVID REVILL, Appellant
 
NO. 12-02-00197-CR and Tr. Ct. Case 25822 
 
Opinion by Justice Diane DeVasto.
 
THE STATE OF TEXAS, Appellee

was determined; and therein our said Court made its order in these words:
            THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same
being inspected, it is the opinion of this court that there was no error in the judgment.

            It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below
Be In All Things Affirmed, and that this decision be certified to the court below for observance.

            WHEREAS, YOU ARE HEREBY COMMANDED to observe the foregoing order of said
Court of Appeals for the Twelfth Court of Appeals District of Texas in this behalf, and in all things
have it duly recognized, obeyed, and executed.

            WITNESS, THE HONORABLE JAMES T. WORTHEN, Chief Justice of said Court of
Appeals for the Twelfth Court of Appeals District, with the Seal thereof affixed, at the City of Tyler,
this the ______ day of __________________, 200_.
 



                                    CATHY S. LUSK, CLERK
 
 
                                    By:_______________________________
                                         Deputy Clerk